The Judges of the United States Court of Appeals for the Eighth Circuit Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Please be seated. Madam Clerk, please publish the cases for argument and submission this morning. The following cases are scheduled for argument this morning, Thursday, April 17, 2025. Case number 24-1990 from the Eastern District of Arkansas, Ruthie Walls et al. v. Jacob Olivia et al. Case number 22-2918 and case number 23-1154 from the Western District of Arkansas, Arkansas United et al. v. John Thurston et al. Third case for argument, case number 24-1488 from Southern Iowa, United States v. Isaac Loggins Jr. together with case number 24-1569 from the Northern District of Iowa, United States v. Barton Crandall. The last case for argument, case number 24-1161 from Western Arkansas, Hiscox, dedicated corporate member v. Susan Taylor. The following case is going to be submitted on the briefs and records without oral argument today. Case number 24-1909 from the Eastern District of Missouri, BCC Partners v. Travelers Property Casualty Company of America. First case for argument, Ruthie Walls et al. v. Jacob Olivia. Thank you. Mr. Steinberg? Counsel? Okay. Judge Loken, and may it please the Court. This case is about government speech. The government speech doctrine says that when the government is self-regulating its own speech, the First Amendment doesn't apply. Normally, government speech cases are fought over whether the speech at issue is government speech. But this case is different. Here the parties agree, as did the district court, that the speech Arkansas's law regulates, public school teaching, is government speech. The only question in this case is whether or not, withstanding that concession, this Court's decision in Pratt, predating the government speech doctrine, requires this Court to apply the First Amendment to Arkansas's law. It does not. Pratt, as I said, predates the government speech doctrine. It didn't apply it, and it's all but impossible to reconcile with that doctrine. So this Court should recognize that Pratt has been overruled, apply the government speech doctrine, and reverse the district court's injunction. I'd like to begin with why Pratt cannot be squared with the government speech doctrine, assuming, as the parties agree, that public school teaching is government speech. So the plaintiffs argue that even if something is government speech, there can still be a First Amendment right to receive it. The district court, we think, does a very good job of explaining in its most recent order why that's not correct. The First Amendment right to receive is derivative of a First Amendment private speaker's right to speak. If you cannot speak to anybody because the state is forbidding listeners from listening to you, then you wouldn't have much of a right to speak. And so the Supreme Court has said that as a corollary to the right to speak, there's a First Amendment right to receive. But where there is no private speech at all, there is no First Amendment right to hear that speech. The second point I would make is that the Supreme Court's first government speech case, Rust v. Sullivan actually rejected a right to receive claim. In that case, doctors sued both on behalf of themselves and their patients, saying we want to talk about abortion inside a government-subsidized program, and our patients have a right to hear that abortion counseling. The Supreme Court didn't say doctors, you lose, but patients, you win. It treated both of those claims as a single claim and said that because this is government speech, the First Amendment is not implicated at all. And third, I think that points up the problem with saying that there's a right to receive government speech. If there were, every attack on how the government is regulating its own speech could be repackaged as a right to receive claim. When does curriculum become speech? When it is expressed by a teacher, when materials are written by the school and assigned to a student, when a teacher is speaking in the classroom. The issue doesn't fit for me. I mean, curriculum is such a broad term, and it's such a long process, that nobody comes to grips with if it's government speech, when. Well, Section 16 only kicks in when a teacher is teaching in the classroom. So the inert curriculum isn't at issue here, and also the teachers are not suing over the inert curriculum. They're suing over the focus on the word curriculum. Yes. You don't need that. I mean, if Section 16 doesn't apply until there's clearly speech going on, why all this focus on curriculum? I think that curriculum is a very clear subset of government speech, but if it's simpler to just think about it as teachers speaking. It's not clear to me what it is. I mean, when the year's classes are set out, okay, oh, that's curriculum, so now we're speaking. Nah, that's silly. Well, I agree with that, and that is not what is at issue here. What we've got here are a couple of students and a couple of teachers who say, we want to teach about critical race theory, and the students say, we want to hear what you, the teachers in our school, have to say about critical race theory, and we're saying that that speech by government employees in their official capacity, highly regulated by their local school board and the state, is government speech, and because it's government speech, nobody has a right to dictate what the content of that government speech is going to be under the First Amendment. If it's simpler to not talk about it in terms of curriculum and just say, this is government speech by people speaking in their official capacity as government employees, that's certainly fine with us. Mr. Steinberg, if Pratt is a zombie precedent, what's the legal standard for sending it to its grave, and has that standard been met here? The standard is whether it has been cast into doubt or undermined by subsequent Supreme Court precedent, and this precedent has been more than cast into doubt. Wait a minute. What case says undermined? Valerio Amorius says both of those things. We cite Valerio Amorius, admittedly, just in a parenthetical at page 21 of our brief, and then it's also in the district court's latest order. Where are you telling me where to find it in your authorities? Where is it? Page 21, and then it's in the district. Sorry, Your Honor. And that language is quoted on that page, both cast into doubt and undermined. And then this formulation is also in footnote 44 of the district court's most recent order, where he points out that this court said the Ninth Circuit has clearly a reconcilable test for when its circuit precedent has been overruled, but the Eighth Circuit has said, if our precedent has been cast into doubt or undermined, there the question was whether Booker had cast into doubt or undermined a circuit precedent. That's the standard. So this precedent has been more than cast into doubt or undermined. Pratt just preceded as though the school were banning a film out in the world by not showing it in its doors, where the school today, we would say, is clearly speaking by airing that film, by screening it. It didn't analyze the government speech doctrine because the government speech doctrine at that time didn't exist. Today, if you got that case, you would have to ask, is the government speaking by deciding to screen a film? I think everybody would say the answer to that is yes. Plaintiffs don't dispute that. Instead, they would say, well, is there nevertheless a right to receive the government's speech? That might be a debatable question, but Pratt has at least been cast into doubt or undermined, sorry, by that intervening doctrinal development of the government speech doctrine. I would like to say a few words about the statute at issue. The statute has been read by plaintiffs to ban the mere teaching of critical race theory, though the definition of prohibited indoctrination says that you are only indoctrinating if you compel a student to adopt a firm or profess a belief, and then it has a savings clause that says, discussion of the ideas in the definition of prohibited indoctrination does not violate that statute. They nevertheless say the critical race theory, just teaching it, is prohibited indoctrination because of the phrase, prevent prohibited indoctrination including critical race theory, later in the statute. We read that including to mean prevent prohibited indoctrination including prohibited indoctrination in critical race theory. Clearly, critical race theory is in some sense a subset of prohibited indoctrination. We say the sense in which it is that subset is that indoctrination in critical race theory is prohibited indoctrination. But teaching about it, the statute makes plain in the savings clause and in the definition of indoctrination itself is not prohibited indoctrination. And finally, I would like to just say a word about the vagueness claim. The vagueness claim has been suggested as an alternative ground to affirm the injunction. The problem with that is that this is not the injunction you would write if you thought the vagueness claim was likely to succeed. The district court denied the plaintiffs, of course, an injunction on the vagueness claim. And had he been trying to – Does the injunction satisfy the mandate in Federal Rule 65d? Nobody talks about that, which to me is perhaps the most important issue. It's not in a separate order, but there is a demarcation. Where does it tell people what they can and can't do? The last two pages of the district court's opinion contain – It doesn't get it done. Not with the specificity the rule requires. We have not raised a 65d challenge. Can we do it suesponding? I think that the court probably can do it suesponding in cases of plain error. But I'm not sure how this injunction lacks specificity. It defines – It doesn't give the people enjoined fair guidance as to what they can and can't do. That's the essence of Rule 65. Notice to the party that's being restrained. So that we don't have a contempt proceeding every week or every month.  Which this injunction is almost guaranteed to produce. Well, that has not occurred in a year or so since it's been issued. In part, that's because we don't read the statute to do what we're forbidden from doing. But all the injunction says is that we may not prevent the plaintiff teachers from teaching about critical race theory, but we may prevent them from compelling a student to adopt, affirm, or profess a belief in critical race theory. And then the injunction does define, consistent with how we read those terms in the statute.  Is the injunction a ban? Like the injunction in Pratt? No, the injunction is only a prohibition on enforcing the statute so as to discipline the plaintiff teachers for teaching about critical race theory. I hark back on all of the litigation involving Arkansas jails screening inmate mail. And our cases have come down, I think, firmly. If it's not a ban, it's a different question. And it seems to me that applies here. And was not applied by the district court. I must confess that I don't see the 65D problem. No, that's not. This is a different. This is my other big problem here. Uh-huh. I certainly see a problem with the injunction inasmuch as it enjoins us from doing something that the statute, fairly read, doesn't do. So if I understand what you're saying is that the injunction is telling the State to interpret the statute the way the State believes the statute is already written? That is correct. This injunction really maps on to our reading of the statute. It repeats how we read the terms adopt, affirm, or profess. So schools could teach about critical race theory. They just couldn't indoctrinate students to believe it. Yes. Sorry. That is what the injunction says. And, of course, if this court decides that the statute never banned the teaching of critical race theory in the first place, it could reverse the injunction on that ground. But we would encourage the court to decide whether Pratt has been overruled because we think that Pratt is creating and will create, should this court say that it survives our challenge to it, a lot of mischief, as the multi-state amicus brief by Iowa explains. Pratt is something of a zombie precedent. It's only been cited by this court twice, the last time in 1997, not very often by district courts. But if it survives this challenge where everybody knows that potentially it's on the chopping block, we think that you may be hearing a lot more about it in cases in the future. And it would be a very hard rule for schools to live under because every time they don't want to teach a topic because they disagree with the views a speaker, a writer expresses, they couldn't do that. They would have to somehow have a viewpoint neutral reason for refusing to teach a particular theory of why the Civil War began, a particular theory of race, and so on. That seems like an unadministrable rule and one that's fundamentally in tension with even the Supreme Court's guidance in PICO that public schools inculcate community values. If there are no further questions, I'll reserve the balance of my time for rebuttal. Thank you. Ms. Brodczyk. Good morning. May it please the court. My name is Maya Brodczyk, Counsel for the Plaintiff at Police in this matter, a group of teachers and students from Arkansas. The preliminary injunction in this case is crucial. Without it, students will lose access to a wide array of materials and information in their classes that they need to help them develop their critical thinking skills and ultimately to support their constitutionally protected rights to speak and participate in our democracy. The district court did not abuse its discretion in preliminarily enjoining Section 16 of the Learns Act because it correctly held that plaintiffs were likely to succeed on the merits of their First Amendment right to receive claim. Contrary to defendants' argument, plaintiffs' right to receive claim is compatible with the government speech doctrine. Defendants' argument is based on the idea that a right to receive claim limits government speech in the same way that the free speech clause limits the government's ability to restrict the speech of private actors. This is not true. While a free speech claim is based on the idea that the government is restricting speech on viewpoint or content-based grounds, our right to receive claim is more narrow. It does not depend on whether the government is making viewpoint or content-based decisions in what it says. Rather, it looks at the underlying purpose of the restriction, and if the restriction is motivated by partisan or ideological concerns or racial animus instead of legitimate pedagogical reasons, then a student's First Amendment right to receive information is violated. Counsel, you seem to agree that the free speech clause's prohibition on viewpoint discrimination does not apply to government speech. Yes. The government, when exercising its government speech power, is allowed to make distinctions based on viewpoint. But here we, I think everyone agrees we have government speech here. There is government speech. But our right to receive claim is not a free speech claim. It is a corollary to a free speech claim, similar in the way that academic freedom is a corollary to free speech in the higher education context. So there's some kind of a motive test applied to the government. Yes. You look at the underlying purpose of why a viewpoint restriction is being done. And the idea there is that in Garcetti, the Supreme Court made clear that there's a limit to government speech in the higher education context because there's these concerns around academic freedom. Academic freedom is not a free speech claim, but it sort of is grounded in First Amendment ideas. Has any circuit court ever adopted that theory that you're proposing in terms of this motive test for government speech? So there have been several circuits who have adopted a limit on government speech based on Garcetti in the higher education context. There's been three courts that have adopted a right to receive claim in the K-12 context post-government speech that adopt a Pratt-like test. The circuit court was the Ninth Circuit in R.C.V. Douglas, which recognized a right to receive claim dealing with a situation where a superintendent had removed a Mexican ethnic studies class. The court there had found that there was no pedagogical reason supporting that removal. It was removed just because the superintendent did not agree with the ideas being taught in that course, and the court determined that that was a violation of the right to receive claim. Let me follow up on something that Mr. Steinberg mentioned. It's also in the state amicus brief. The amicus states assert that your reading of this law would mean that a student could assert a First Amendment right to force his class to read the Bible, listen to President Trump's campaign speeches, and to watch white supremacist propaganda films all under this right to receive information. Why are they wrong? The right to receive claim focuses only on when the government removes information from a pre-established curriculum. So the right to receive claim does not allow students to sort of affirmatively force the government to make decisions when deciding what should be in a curriculum. So the government could decide to put something in its curriculum, but it can't decide to take it out? It could put something into its curriculum that is later challenged when it tries to take it out, but again, if the government is removing it for a sound pedagogical reason, of which there could be many, then that claim would not be successful. But if the government has already made, I mean, typically the way that curriculum is created, and I think this goes a little bit to the questions that Judge Loken was getting at, we view curriculum as sort of the materials that state and school districts decide need to be taught. So this is both topics and, for example, what textbooks or what materials are being used to teach students. That process is often a very long and involved process involving a lot of different stakeholders, teachers, experts, and they all get together and decide what is the best way to teach our students any given subject and any given grade. Once those decisions have been made and a curriculum has been created, if the government, as the case here, if the legislature sort of comes in and big-foots the process and decides, you know what, we don't like this, take this part out, that is something that we're concerned with because the legislature is not acting in the best interest of children. They're not thinking about the educational purpose. They're just removing something because they don't like it. They disagree with it in some form, and their decision is not supported by a pedagogical interest. So state legislatures can't decide what school curriculum should be? Of course they can. The state legislature is the one that created the rules and regulations by which curriculum is decided. But they can't decide to remove something that they've decided to insert? They absolutely could remove it. They could absolutely decide to remove it, but they would need to essentially, as students have to do in school, show their work. They need to show why they believe that removing this information from the curriculum, whether it's a given book or a topic, furthers a student's educational interest, why it's important for students to be taught in this manner, rather than just saying, we don't like it, take it out. Is your theory dependent upon Pratt, or is there some Supreme Court authority that underlies this? I think, again, I would point to Garcetti. Again, it's in the higher education context, but this idea that schools are an incredibly important place to not just educate skills in sort of basic arithmetic, how to read, but really to prepare them for participation in our democracy, critical thinking skills, and being able to look at a variety of different points of view, a lot of different materials, and decide how they want to vote, who they want to elect is incredibly important, and that is why there needs to be this slight limitation on government speech within the education context, whether it's higher education or in K-12. Going to this idea of Pratt, we believe that Pratt is still good law because it can coexist with the government speech doctrine. Again, the court has always been clear that there are limits to the government speech doctrine. In Suman, for example, it talked about that there are limits on government speech based on the First Amendment's religious clauses, and in Garcetti, it again noted that there is this academic freedom idea that's rooted, that's grounded in the First Amendment that limits it. We are merely offering that Pratt suggests a similar limitation in the K-12 context, and in that way, it's perfectly compatible with the government speech doctrine because there's been no government speech case that says government speech is completely unlimited in the K-12 context. As my opposing counsel mentioned, the standard here is cast into doubt or undermine. The court's precedents, I think, in this area treat those two terms as being interchangeable, and here, we really don't have that situation. When you look at the cases where the court has found that a Supreme Court decision has undermined or cast into doubt an Eighth Circuit precedent, we're always dealing with a much more similar context between the Eighth Circuit precedent and the Supreme Court precedent. For example, there's many cases like Taylor and Thomas that are dealing with sentencing guidelines, and there's a Supreme Court decision that establishes a rule by which judges look at sentencing guidelines, and then there's an Eighth Circuit precedent that had articulated a different rule. That Supreme Court precedent undermines that previous Eighth Circuit precedent. In City of Timber Lake, for example, there's a discussion over what the term Indian country means, and the parties in that case pointed to a recent Supreme Court decision that had interpreted that term broadly in the context of a relevant statute and had, in fact, mentioned another statute that was relevant to the case at hand. We don't have any situation, or none of the cases that appellants have cited, was there a situation in which a Supreme Court precedent that does not mention the issue at hand was nonetheless found to have undermined a previous Eighth Circuit precedent? That's the case here. There are a bunch of cases in the government speech doctrine, but none of them address what the limits of that doctrine are in the K-12 context. In fact, there are no government speech cases that were directly about the education context, whether higher ed or otherwise, as well. And so the idea that sort of reasoning, this reasoning by analogy, or sort of saying that these two types of doctrines are not able to coexist when there's no Supreme Court precedent, saying that even in dicta, I think is not enough to suggest that Pratt is no longer good law. Can you apply the principles in the later cases that don't mention one of our precedents in applying our precedent to the current? Of course. I think not as a way to find that a previous Eighth Circuit case is overruled. Of course not. Well, you know, we are interpreting our precedents in light of subsequent developments in the law and particularly in the Supreme Court all the time without overruling those precedents. Right, but I think here the issue is that Pratt speaks directly to the issue at hand, so unless Pratt is overruled. You have to apply Pratt here. I don't think that's easy. I've already said Pratt dealt with a ban. This injunction doesn't. They're different. I would disagree, respectfully, Your Honor, that Pratt dealt with a ban. Pratt was about a decision made by a school board. Yeah, well, I just went and read it again. It dealt with a ban of movie books, whatever it was. Yes, and this statute. So I understand, Your Honor. My apologies. I think in this case, Section 16 also deals with bans because the statute says that the Secretary of Education has to amend. Well, that's my problem with the injunction. I can't tell whether it's a ban or not, the injunction itself. Well, I don't. The statute isn't. The injunction, I don't think. The statute isn't worded as a ban. No. It's a limiting mandate, if you will. I believe it. Section 16 operates as a ban in that it directs the Secretary of Education to remove materials from a curriculum, which to me is the same as banning them from their curriculum, saying these materials, we believe, constitute prohibited indoctrination. You cannot have them. And so in that way, the — All right. But you have to apply it. Remove materials that fit this broad description. Well, that's not a ban on anything until it's applied. So, yes, of course, Your Honor. You are correct in that the statute does not specifically identify specific textbooks or other materials that need to be removed. And as in Pratt, we were dealing with a sort of as-applied challenge as to the removal of one specific movie and related materials. But I think here our right to receive claim is facial rather than as-applied. And so it's looking into the statute as a whole. Yes. And that gives you the biggest hill to climb. We don't find almost anything facially invalid. That is true, Your Honor. But I think here you can see that the state in their actions they took both before and after the statute was passed show that they believe it operates as a ban. So, for example, I would draw your attention. There was an executive order that before the Learns Act was passed that had very similar language to Section 16. I don't think any school district has stood up and fought it. They've just caved. To the executive, to this law. I mean, well, yeah, because teachers, I mean, this relates a little bit to our vagueness claim. Don't get all this chilling stuff. You know, I don't buy that. I mean, but we have in our declarations, we have our teacher plaintiff stating that they have removed materials, certain books and articles because they think. Go to trial and we'll find out. But we have, so at the preliminary injunction phase, of course, we're dealing with likely to succeed on the claim. And so the declarations we've provided that have talked about both teachers removing materials as well as the letter from the Secretary of Education, Mr. Oliva, stating that there are units and themes within the AP African American Studies course that violate the law, I think all show that the law is operating as a ban. That there are materials the state sees as not being allowed under the law. And I think, again, you can see how the state interprets the law fairly broadly when it's implementing it. Because under the executive order, which contains essentially similar language, after that EO was passed, the state removed various materials related to African American achievements from a state website that was to provide educational resources for teachers to use in the classroom and teaching history. Counsel, even under your theory of the case, wouldn't the plaintiffs have to show this improper motive on a case-by-case basis? It is a fact-based inquiry. So anytime there is an argument made that the state is removing materials for an improper purpose rather than pedagogical reasons, we'd have to show that. But I think that here is clear because if you look at the legislative history to Section 16 and you look at what Governor Sanders and the Secretary of Education said in the wake of that law, their statements make it clear that this law was passed because they're worried about leftist indoctrination. They're worried. They don't agree with the political valence of ideas like critical race theory, and so they want to remove them. And in fact, the district court made a factual finding that the state had not provided any legitimate pedagogical interest to support Section 16 as a whole. And that factual finding is, of course, entitled to deference. I also just wanted to address Judge Loken's question regarding Rule 65D. I think the injunction here is clear enough as to what the state can and cannot do because beyond just the part of the opinion that says that the state cannot enforce the law against our teacher plaintiffs if they are teaching critical race theory, there are elements within the opinion that make it clear what compelling a student or requiring a student to profess look like. And those are things like requiring that a student adopt a certain position in order to get a good grade or, you know, removing a student from a classroom because they said something that the teacher told them not to. And so even though the sort of language at the end of the order has a very specific injunction language, uses some of the similar terms from the statute, there is an explanation within the order overall that explains what exactly that prohibition looks like. If we add our first contempt petition yet under the preliminary injunction? There has not been a contempt petition, Your Honor. You're holding back. No, I mean, Your Honor, to the state's credit, there's a preliminary injunction in place and they have followed the rules of that both in specifics as to our teacher plaintiffs but also in continuing to follow the narrow interpretation of the law they put forward at the oral argument and that the judge memorialized in his order. I think without that preliminary injunction, what the state might do is certainly of concern to our clients, but with this preliminary injunction in place, the state is bound by its narrow interpretation and it has done so in the years since that injunction has been put in place. I think I'd also just want to mention that without Pratt or this sort of right to receive claim, we really, the government speech claim would allow the state to do anything it wants with education. It really would provide unlimited power in a way that I think is not appropriate for education, and I think here a great case to look at as an analogy is Cajun, which was a case about, it was not about government speech. It had to do with posters that this Court decided. What's the case again? I'm sorry? I didn't pick. I thought I heard Cajun, but I have no idea what you're talking about. Oh, my apologies. So the case is C-A-J-U-N-E. I will tell you I'm not honestly sure that I am pronouncing it. I'm supposed to know everything in your table of authorities. In fact, it's not a case that's cited in our case, but it's cited in one of the amicus briefs. Oh, my goodness. Come on. It's Cajun v. Independent School District, and it is in the Brief for Citizens for Arkansas Public Education and Students amicus brief, and in that case, What year? What court? What decision? Of course, Your Honor. So the site is 105 F. 4th, 1070. It's an Eighth Circuit case from 2024. Thank you. Of course. And in that case, the issue at hand was posters that a school had been encouraged to put up by the community stating Black Lives Matter. There had been requests from a smaller group of the community asking for All posters to be put up. This court decided that this was not government speech, and therefore, those decisions had violated free speech on viewpoint discrimination grounds. But imagine instead of posters, we were dealing with something curriculum based, for example, books that were being assigned. Without a right to receive claim, in that situation, the people who are having their points of views removed from the curriculum would have no way to address their concerns in a court. They'd have to rely on democracy and elections. But when you're already in the minority, those avenues of relief are not going to be available to you. And that's a situation in which the first Let me ask you this. Do you think the pending case before the Supreme Court, the St. Isidore case, do you think it could have some impact on this curriculum control question? I suppose that my time is running out, but I'm happy to answer that question. I don't believe so. The St. Isidore case, if I'm remembering correctly, has to do with allowing the Ten Commandments in schools. I'm sorry. No, it's more of a charter school question. Whether the state can support charter schools that have a religious foundation. I will admit I am not entirely familiar with that case. I don't know the specifics. I'm happy to provide a supplemental briefing if the court would like. I do not believe that it will be relevant, because I don't believe government speech has come up. Questions around funding, I think, relate more to establishment clause issues rather than government speech. It's not a question of, and I think in that way, there's already precedent from the Supreme Court that says government speech is going to be limited when it runs up against First Amendment religious clause issues. I see that my time is up, Your Honors. If there are no further questions, I would ask that this Court affirm the District Court's preliminary injunction below. Thank you. So three broad buckets of points. The first is that on the one hand, I hear that they want to keep Pratt and it hasn't been overruled, but on the other hand, I heard. You don't have to raise the podium or speak up or get the mic closer. You can raise the podium, you know. I think there's a button on the right. Can you hear me now? Barely. Oh, sorry. Speaking up is the best answer. On the one hand, I hear that they want to keep Pratt, that Pratt coexists with government speech doctrine. But on the other hand, what I heard was a substantial rewrite of Pratt to coexist with the government speech doctrine. And we think that once you're rewriting Pratt, you can't really say that Pratt is still the law if you have to change it quite a bit to save it. Once we get past Pratt. Well, then the rewrite becomes the current law. But the rewrite would become the current law. But if Pratt is no longer binding on this court, I think the rewrite that they're proposing has very little to recommend it. You know, that's a distinction that in my view is just false. You don't understand appellate courts applying the precedents. Circuit precedents certainly can change in light of Supreme Court doctrine, but the way in which they're saying this one has changed and survives in part and no longer survives in part we think doesn't work. So they say that there is no. It doesn't mean that Pratt is gone. Pratt may not necessarily be gone. My instinct is we could write an opinion in this case without citing Pratt. You could. You could. But if I could just turn to. Going either way, frankly. Yes. If I could just turn to what they say the rules should be now, they say there is no First Amendment right to speak, but there is the secondary corollary of the right to speak that still survives the government speech doctrine. The corollary is frankly parasitic on the primary right to speak. If there's no primary right to speak, there is no corollary to hear the speech. This whole corollary right to receive was created by the Supreme Court as a derivative of the right to speak in cases like Lamont v. Postmaster General, Stanley v. Georgia. If I have a right to speak, I need an audience. The state can't ban my audience without affecting my right to speak. I heard that this rule would distinguish between viewpoint discrimination, which is okay, and ideological discrimination, which is not. I don't understand, frankly, the difference between those two things. I heard that we would have to show our work if we were to remove something from the curriculum as though the Administrative Procedure Act, through the guise of the First Amendment, applied to a public school's rewriting their curriculum. That is not and cannot be the law. And then last, to your point, Judge Loken, we agree with you. If Pratt still survives, our law is not a ban of teaching critical race theory. It is a prohibition on indoctrinating students in critical race theory, compelling them to adopt, affirm, or profess certain ideas. And the plaintiffs say, we are only acting that way because of the injunction, but the injunction only applies to a couple of named plaintiffs, and we're not enforcing the law any differently as to anybody else. And that's the position that we took below, and it's consistent with the plain meaning of the statute. And my friend did not point to any language in the statute to the contrary. So for all of these reasons, we would ask that you reverse the district court's injunction. And if there are no further questions, I'll sit down. Thank you. Thank you, Counsel. Very complicated issues. They touch a lot of ground, both well-traveled and not. So the argument's been helpful. It's been thoroughly briefed. We'll take it under advisement.